We'll turn to the next case on our calendar, which is R. Alexander Acosta v. North Eastern Precast et al. May it please the Court, my name is Scott Glapman. I represent Petitioner Acosta, the Secretary of Labor. The Commission's final order should be reversed for two reasons. First, because the Commission lacked authority to vacate the crane violation as duplicative because there is nothing fundamentally unfair about holding Northeastern liable for both violations. Second, and alternatively, the Commission abused its discretion by departing from its prior precedent on duplicativeness without a reasoned explanation by narrowly considering only whether the two violations could have been abated by the same action. I'll start with the first reason. The Commission lacked authority to vacate the crane violation. The two violations arose from separate and distinct hazardous activities. This is Judge Winter. Is it not the case that the Commission has for some time been vacating some judgments as duplicative? Yes. Yes, Your Honor. Isn't it the case that the Secretary of Labor has authority to issue a regulation stopping that practice? No, he does not. This is a matter of this duplicativeness doctrine is a Commission-created doctrine. I'm not talking about application of the constitutional standard, but doesn't the Secretary have power to eliminate duplicative vacators whether or not they violate the Constitution? No, the Secretary does not have that power. The Secretary has the power of challenging the Commission's judgments of duplication, of duplicativeness, but the Secretary has no power by regulation to eliminate the Commission's authority. Can the Secretary issue a regulation barring the Commission? No, the Secretary does not have that authority. This duplicativeness doctrine is created by the Commission. The Secretary can contest Commission's judgments, but he doesn't have the power of eliminating that authority altogether. Who issued the regulations that led to the violations, sir? The standards. The Secretary did. Why couldn't the Secretary just add another regulation? Well, because they're fundamentally different things here. The standards say what the employers have to do or what they can't do in the workplace. The duplicativeness doctrine is a doctrine that the Commission developed. Who establishes the penalties? I'm sorry? Who establishes the penalties for violation? In the first instance, the Secretary proposes the penalties, but the Commission has the final authority to assess penalties. I'm not asking about what happens in a proceeding before the Commission. I'm asking whether the Secretary establishes the penalties for violations, which the Commission then enforces. No, it's actually because the Secretary, as I said, can propose penalties, but the assessment of them is done by the Commission. That's the Commission's authority by statute to assess penalties. Where does the Commission find the penalties? Where does it find the penalties? Yes. We pull them out of the air? No, it considers what the Secretary proposes, and it may agree or disagree. It may— Is there any statutory or regulatory authority establishing what kind of penalties can be imposed? Can it impose a death penalty? No. The statute specifies the factors that the Commission has to consider in assessing penalties, such as probably the most important one is the severity of the violation. But the assessment is the Commission's authority. It's not something the Secretary can do. The Secretary can only propose penalties, which the Commission can either accept or reject or modify. And what does the Secretary look for the limits on the penalties? Limits are specified by statute. For instance, for willful violations, the maximum penalty is $70,000. This is set forth in the statute, the OSHA Act. That's all I'm asking. Okay. The two violations were not the same, or not even similar, because they arose from separate and distinct hazardous activities. The crane violation concerned willfully failing to confirm that power lines had been de-energized and visibly grounded or to take the alternative steps required by the cited provision before using a crane to help hoist and set planks within eight feet of overhead power lines. The electrical proximity violation, on the other hand, involved willfully permitting employees to install a fall protection system within three feet of an energized overhead power line and to erect a masonry wall within four inches of the energized lines. The two violated standards are separate and distinct standards that regulate fundamentally different workplace conduct, crane operations in proximity to energized power lines, and employee proximity to electrical power circuits. The two violations occurred on different There are arguments as to why the commission shouldn't have viewed it as different, as two different, as duplicative violations. But given your responses to Judge Winter, what's your argument for why, as a matter of law, they lacked discretion to view them as duplicative? That gets down to the separation of powers between the secretary and the commission under the statute. The secretary is given the authority, the exclusive authority, of prosecutorial discretion to decide when to issue a citation or when not to issue it or when to withdraw one. The commission doesn't have that power. The commission can vacate the secretary's citations when they're proven, only if they're duplicative. And to show that something is duplicative is a matter of showing that some fundamental right of the employer has been violated. Your quarrel is not with the secretary, not with whether or not the commission could have merged the punishments, so to speak, or the penalties. It's with the fact that he treated it as not being a penalty, as not being two penalties. Is that your quarrel? No, what we're saying is that these violations were not sufficiently similar that they could be treated as, in essence, as being the same violation. You're not quarreling with if the commission had seen it as two violations and left them standing, then the issue of how much of a penalty to impose for them, that would have been a separate question. That's a separate question. Okay. The two violations occurred on different days and in different areas of the work site and exposed different groups of employees to the cited hazards. My second reason was that, alternatively, the commission abused its discretion by departing from its prior precedent on duplicativeness without a reason to explanation. The commission previously examined other factors besides abatement in determining duplicativeness. For instance, the conditions giving rise to the violation, whether they were the same or very similar, whether the two standards violated are closely related sub-provisions of the same standard, whether the two violations occurred on the same date and the same location and the facts supporting both violations are the same, and whether the same employees were exposed to the hazards involved in the two violations. Indeed, in every previous case in which the commission has found duplicative violations, the cited standards were closely related and regulated the same or very similar workplace conditions and conduct. Furthermore, in at least four prior cases, the commission has found that violations that have the same abatement were nevertheless not duplicative because the violative conditions were separate and distinct, the violated standards regulated fundamentally different conduct, or the secretary had statutory authority to cite both violations. So you would agree that with the view of Commissioner Atwood in his dissent, in the dissent, that the commission's jurisprudence in this area is, quote, confusing and conflicting, right? Yes, that's true, Your Honor. All right. If that's the case, then how can you conclude that the commission's decision to apply some aspects of that conflicting jurisprudence must be considered arbitrary and capricious? Well, because the elements of a proper duplicativeness finding have, at different times, been enunciated by the commission. It's just that the application has been inconsistent and incomplete. All right. Thank you. Thank you. You've reserved two minutes. Mr. Greenbaum. Thank you, Your Honors. Jonathan Greenbaum for Northeastern Precast. I find nothing extraordinary in the commission's decision here. In defense to the citations that were issued before the ALJ hearing, we raise the affirmative defense of duplicativeness. It's a standard that's been addressed by the commission for years. There's precedent. All the commission did here was apply their precedent. There's the same abatement test. They've been applying that for years. If you look at the attachment to the dissent, the dissent has an attachment of all the duplicativeness cases. Some they found duplication. Some they didn't. The overriding theme, though, is when— Why is abatement the correct way of looking at it, specifically abatement alone rather than the distinctiveness of conduct? Because without considering the distinctiveness of the conduct, there might be an appearance here that the defendant was being given a free pass for exposing a different group of employees at a different time in a different way to the same hazard. I'm not sure that that seems to have much appeal. I think the commission did address the appearance of it. Here what happened was they were given a willful violation, even with the duplication. It was essentially the maximum penalty. They were deemed to be a small employer, and originally they got a little bit of a break because being a small employer— The penalty question, as your adversaries acknowledged, is really quite different, whether or not on two violations there will be some mitigation of the penalty. I don't quite see—well, these were not separate and distinct. Really? Yeah, it was the same. The standard was proximity to the overhead power line. It was the same power line. They were not separate and distinct. Day after day after day, no matter how many violations they got, they could keep giving workers the orders to work and it would be free. Well, they couldn't because the workplace was closed down. Yes, but before it was closed down, relying on them that they were going to change, they didn't, and they exposed a different group of workers in a different way to the same hazard, and yet you're saying what, the law properly views that as free? Because the same abatement corrected— I understand you're saying that, but why should that be the standard? The simple answer, Your Honor, is that's the commission's precedent. Your adversary says that they have never viewed it as duplicative, where abatement was the only common factor. That's incorrect, Your Honor. Tell us which cases. If you look at the table, there are cases, and we cited them in our brief, and I believe it's the Salas case, I may be pronouncing it wrong, but if it's the same abatement, then it's a duplication. The cases for separate and distinct, if you look at the chart, there was one that's separate and distinct, two separate sets of scaffolding, not like the same exact power cord. One was a guardrail versus the rebar, separate. Those are separate issues. This was the same electrocuted power line, the proximity. The crane, right? And in the other instance, they've got the guys going up with the wall. Its proximity to the overhead power line was not separate and distinct, and the same abatement corrected both, and that is actually the only abatement that would have been permissible. And if you look at the exhibit in there, the Long Island Power Cease and Desist, it said no work until the overhead power line is removed and relocated, and that was the only abatement available. And the commission just applied their precedent. If the commission wants to change their precedent, that would be for the commission, but it's not for the court to do, just like this court noted in the Oswego case with the single employer sort of doctrine that the secretary said, well, they're not applying the single employer test correctly. Well, this court said that's not for this court to correct. That's for the commission to correct. And that would be the same here. The commission precedent has been around for years, and employers rely on it. If the same abatement corrects the violation, then they're duplicative. If the commission wants to change that as advocated by the dissent, they can certainly do it. Or the secretary could make a rulemaking, which is what Judge Winters indicated. They can certainly make a rulemaking, just like they can make a rulemaking on a single employer issue, just like the National Labor Relations Board did. They could make a rule with respect to abatement and duplicativeness. There is none. We're relying on their precedent, which has been uniform, and that's why we raised it as an affirmative defense. It was the same power line. Proximity to the power line was the violation. My clients did not get off easy. They have a willful violation for the maximum penalty. And I know we're talking that maybe the penalty is divorced from the actual violation, but it does have a willfulness attached to it, which is the most egregious type violation. We're not contesting the violation per se. We're contesting the fact that they're duplicative. And embedded in that doctrine is the fundamental fairness to the employer, that they don't have two violations for the same conduct that could be abated by one action. And that's what we relied on throughout this proceeding. I understand you're abated by one action, but I don't see how you can say you have the same conduct. Because the conduct was working within the proximity of the overhead power line. On that, you could say, you know, it's working on the job. The way these workers were exposed to the hazard seems to have involved quite different conduct, or am I missing something? I think it's the same conduct. It's actually working in impermissible proximity to the overhead power line. I think it would be a different issue, Your Honor, if, let's say, while one of the employees was working, they weren't wearing a hard hat. That would not be a duplicative standard, but it occurred while they were working in proximity to the overhead power line. These were solely, they were cited for working in close proximity to the overhead power line, whether it was through the crane or through the just actual working. They were exposed through the same type of condition. And the commission precedent is, if the same abatement corrects the violative conduct, it's duplicative. If the commission wants to change that, they certainly can do it. But that's not for this court to do. Thank you, Your Honor. Thank you, Mr. Greenbelt. Mr. Gladman. Thank you, Your Honor. Just a few points on rebuttal. My opponent contends that all the commission did was to apply the same abatement test that it's always applied in its cases, and that's not the case here. In fact, as we pointed out in our brief on pages 25 to 28, the commission has considered many multiple factors in determining whether duplicativeness existed. And indeed, in every previous case, the commission has actually found duplicative violations and cited standards were closely related and regulated the same or very similar workplace hazards. And as I mentioned in my first argument, in at least four prior cases, the commission has found that violations that have the same abatement were not duplicative. Now, my opponent also said that the violations were separate and distinct. That is just not the case here. At the broadest level, there was a hazard of electrocution, but the activities were completely different involving different workers and different equipment. The requirements for the crane standard, for instance, are very different from those from the electrical proximity standard, which concerns only employees. And furthermore, the actual circumstances were very different as well. The crane violation occurred when workers were within eight feet of the crane. The crane was within eight feet of the electrical power line. And the electrical proximity violations occurred when employees were within four inches of the energized lines. Now, the last point that my adversary made was that it's up to the commission to correct the test if it's mistaken. That's really not the point here. The point is that the commission has exceeded its authority. It encroached on the secretary's authority to decide when to prosecute or not to prosecute by essentially vacating violations that were proved on the ground that these violations were duplicative without showing there was some fundamental unfairness in citing the employer for both violations. Thank you, sir. We reserve the decision.